# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| MELANIE T.,[1] | : | Case No. 3:20-cv-00348 |
| Plaintiff, | : | |
| | : | District Judge Thomas M. Rose |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[2]

**I.     INTRODUCTION**

Plaintiff Melanie T. filed an application for Disability Insurance Benefits and for a period of such benefits in September 2017. The claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, Administrative Law Judge Lovert F. Bassett concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action. She presently seeks a remand for benefits, or in the alternative, for further proceedings. The Commissioner asks the Court to affirm the ALJ's non-disability decision.

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").
[2] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. No. 9), the Commissioner's Memorandum in Opposition (Doc. No. 11), and the administrative record (Doc. No. 8).

## II. BACKGROUND

Plaintiff asserts that she has been under a disability since July 14, 2017. At that time, Plaintiff was forty-five years old. Accordingly, Plaintiff was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 404.1563(c). She has at least a high school education.

The evidence of record is sufficiently summarized in the ALJ's decision (Doc. No. 8-2, PageID 51-65), Plaintiff's Statement of Errors (Doc. No. 9), and the Commissioner's Memorandum in Opposition (Doc. No. 11). Rather than repeat these summaries, the Court will focus on the pertinent evidence in the discussion below.

## III. STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470, 106 S. Ct. 2022, 90 L. Ed. 2d 462 (1986); *see* 42 U.S.C. § 423(a)(1). The term "disability"—as defined by the Social Security act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §423 (d)(1)(A); *see Bowen*, 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakely*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance…" *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**IV. THE ALJ'S DECISION**

As noted previously, it fell to the ALJ to evaluate the evidence connected to Plaintiff's application for benefits. In doing so, he considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

| | | |
|---|---|---|
| Step 1: | | Plaintiff has not engaged in substantial gainful activity since July 14, 2017, her alleged onset date. |
| Step 2: | | Plaintiff has the severe impairments of vertigo, depression, and anxiety. |
| Step 3: | | She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | | Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work…except that she could occasionally climb ramps and stairs, occasionally stoop, occasionally crouch, and occasionally kneel, but could not climb ladders, ropes, or scaffolds, balance, or crawl. The claimant could not tolerate exposure to unprotected heights or dangerous moving machinery. She needs a routine work setting with few, if any, changes and should not have a job that is fast pace with numerically strict production quotas, but could satisfy end of the day employer expectations." |
| Step 4: | | Plaintiff is unable to perform any of her past relevant work. |
| Step 5: | | Plaintiff could perform a significant number of jobs that exist in the national economy. |

(Doc. No. 8-2, PageID 53-64). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 65.

4

## V. DISCUSSION

The present case centers on the assessment of Plaintiff's impairments at Step Two and the subsequent evaluation of her residual functional capacity. Plaintiff contends that the ALJ failed to classify certain impairments—postural orthostatic tachycardia (POTS), degenerative joint disease, dropped foot, and essential tremor—as severe or non-severe impairments, which by default, means that these impairments were considered to be non-medically determinable impairments. (Doc. No. 9, PageID 2025). She argues that this error ultimately impacted the ALJ's consideration of these impairments in the remaining steps of the sequential evaluation process. Responding in opposition, the Commissioner maintains that the ALJ properly considered all of Plaintiff's impairments.

At step two of the sequential evaluation process, the ALJ is required to consider whether a claimant's impairments are "medically determinable impairments" and whether such impairments are severe. 20 C.F.R. § 404.1520(a)(4)(ii). A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical laboratory diagnostic techniques." 20 C.F.R. § 404.1508. Evidence from an acceptable medical source is required to establish a medically determinable impairment. 20 C.F.R. § 404.1513(a). The impairment must also meet the duration requirement, which means that it "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509.

When a claimant has "at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining steps." *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003). However, "a claimed condition which is not

5

'medically determinable' need not be considered at all." *Rouse v. Comm'r of Soc. Sec.*, No. 2:16-cv-0223, 2017 WL 163384, at *4 (S.D. Ohio Jan. 17, 2017) (Kemp, M.J.), report and recommendation, adopted, 2017 WL 1102684 (March 24, 2017) (Marbley, D.J.).

As described above, Plaintiff takes issue with the ALJ's failure to classify some of her impairments as medically determinable impairments. She describes that her impairments of postural orthostatic tachycardia (POTS), degenerative joint disease, dropped foot, and essential tremor have more than a "minimal effect" on her ability to perform basic work activities. (Doc. No. 9, PageID 2026). She also asserts that the medical evidence of record establishes that these impairments are medically determinable. *Id.*

Yet, even assuming that these impairments should have been classified as medically determinable impairments, Plaintiff has not demonstrated that reversible error occurred in the instant case. As an initial matter, Plaintiff indicates that the ALJ failed to consider these impairments "in any capacity, let alone, as medically determinable impairments, erroneously failing to give these substantiated impairments any consideration." *Id.* at 2027 (emphasis in original). However, this is incorrect. The assessment at step four reflects that the ALJ acknowledged and considered these impairments notwithstanding the presumption that he found these to be non-medically determinable. (Doc. No. 8-2, PageID 56-59).

Take, for example, Plaintiff's postural orthostatic tachycardia. In assessing her residual functional capacity, the ALJ explained the history of this impairment. He described the events leading up to her POTS diagnosis in late-2017 as well as the instruction and recommendations that Plaintiff received from Dr. Wilson regarding her diagnosis and symptoms. *Id.* at 58. Likewise, the ALJ explained that she "reported

6

increased symptomology related to her POTS, noting that she was having problems with her activities of daily living and experienced increased brain fog." *Id*. at 59. He also considered its effects—which Plaintiff classifies as interference with her ability to stand or walk and her ability to remember things. *Id.* at 59; (Doc. No. 9, PageID 2023-24).

In further support of her assertions, Plaintiff points to the testimony of medical expert, Dr. Subramaniam Krishnamurthi, which the ALJ found to be "highly persuasive." (Doc. No. 9, PageID 2026). She highlights Dr. Krishnamurthi's opinion because he testified that her impairments included degenerative joint disease of the cervical spine, vertigo, drop foot, optic neuritis and tremors.[3] *Id.* Plaintiff's downfall, however, is that the remainder of Dr. Krishnamurthi's testimony does not ultimately favor her position.

Even taking into consideration the impairments of degenerative joint disease, drop foot and tremors, Dr. Krishnamurthi testified that Plaintiff could:

> [L]ift frequently 10 pounds; occasionally 20 pounds; can sit six out of eight-hour period; stand and walk together a total six hours over eight-hour period; use of hands, reaching, handling, fingering, feeling, grab maneuver, no limitations. Also, no ladders, scaffolds, or ropes; climbing stairs, bend, stoop, occasional; no crawling, no balancing; kneeling, occasional. No heights; no heavy machineries.

(Doc. No. 8-2, PageID 92). This opinion closely aligns with the ALJ's residual functional capacity assessment. Furthermore, upon questioning by Plaintiff's counsel, Dr. Krishnamurthi confirmed that Plaintiff should be able to function with these limitations. *Id.* at 93. He also specifically identified that vertigo would not cause her to be off-task or

---

[3] Plaintiff states that Dr. Krishnamurthi testified these impairments were "severe." (Doc. No. 9, PageID 2026). The record reflects, however, that Dr. Krishnamurthi identified these as "the main impairments," rather than as severe impairments. (Doc. No. 8-2, PageID 91).

7

unable to complete tasks during a normal day and that she would not require limitations with her hands or upper extremities based on the medical evidence. *Id.* at 92-94.

Ultimately, although the ALJ did not classify certain impairments as medically determinable or non-medically determinable impairments, he nevertheless acknowledged these impairments and relied on Dr. Krishnamurthi's inclusive-opinion. There is no evidence that Plaintiff would require further limitation. While "[i]t would certainly be better practice [for] an ALJ to say explicitly which impairments are found to be non-severe and which are found not to be medically determinable, [] ordering a remand for clarification of that question when the ALJ's residual functional capacity finding would not change would be an exercise in futility." *Rouse*, 2017 WL 163384, at *5. That is the case here.

Plaintiff also more broadly challenges the residual functional capacity assessment to the extent that it addresses her ability to stand or walk and her daily activities. This too falls short. She asserts that her impairments render her incapable of light work because she cannot sustain the amount of standing and walking required at this level of exertion. Although light work may require "a good deal of walking or standing," substantial evidence supports a finding that she can perform such work. *See* 20 C.F.R. 404.1567(b).

Plaintiff experienced some unsteadiness and reported frequent falls. (Doc. No. 8-10, PageID 1396). However, on exam, she was observed to be ambulatory with normal gait and stride. (Doc. No. 8-12, PageID 1961). She also presented with full power of her legs in functional testing and was able to rise and sit from a chair without incident. *Id.* On another occasion, when Plaintiff presented to the emergency room for dizziness, nausea, and fatigue, she arrived alone and was ambulatory. (Doc. No. 8-11, PageID 1582). Upon

physical exam, providers identified that her coordination, gait, strength and reflexes were normal. *Id.* at 1584. The record reflects that she "ambulated from the emergency department without difficulty or assistance in good condition." *Id.* at 1585. At the hearing, Dr. Krishnamurthi also recognized that providers noted her gait was often normal. (Doc. No. 8-2, PageID 94-95). Plaintiff did report using a wheelchair for a period of time, but the ALJ noted "there is no evidence that during the period at issue she required an assistive device for ambulation." *Id.* at 60. For these reasons, substantial evidence supports a finding that Plaintiff could perform the standing and walking required by light work.

Plaintiff also alleges that the ALJ erroneously cherry-picked medical evidence and statements in the record to support his residual functional capacity assessment. For example, she contends that while the ALJ found Plaintiff "retained the ability to drive," he "failed to acknowledge her statements about only driving once per week, to her counseling appointment…" (Doc. No. 9, PageID 2030). However, this is not accurate. On the contrary, the ALJ accounted for Plaintiff's testimony "during the hearing that she is able to drive one day per week to counseling and the drive is nine miles each way." (Doc. No. 8-2, PageID 61). He determined that her ability to make this regular eighteen-mile trip undermined reports that she was completely unable to drive. *Id.* He also acknowledged Plaintiff's testimony that she cancelled several appointments when "she didn't feel like driving." (Doc. No. 8-2, PageID 77). However, the ALJ did not find this persuasive because, while records reflect cancellation due to illness, he found the majority of cancellations were attributed to other reasons such as being on vacation. (Doc. No. 8-2, PageID 61); (Doc. No. 8-12, PageID 1870-72, 1878-80, 1892-93, 1894).

9

Plaintiff also asserts that her ability to fold laundry does not support a finding that she lacked disabling limitations. *Id.* Plaintiff's ability to fold laundry, however, was only one of the daily activities that the ALJ took into consideration. He explained that in addition to folding laundry and driving once per week, Plaintiff regularly attended church and would grocery shop if she could use a motorized cart. *Id.* He also noted earlier in the decision that Plaintiff reported during her consultative psychological examination that she adhered to grooming and hygiene and that she completes household chores "when she is not busy." *Id.* at 60. Plaintiff was able to travel by airplane to visit her mother in Florida. *Id.* at 61. For these reasons, the undersigned declines to find that the ALJ erroneously cherry-picked evidence to support his residual functional capacity assessment.

There is substantial evidence to support the ALJ's non-disability decision. Accordingly, Plaintiff's Statement of Errors lacks merit.

**IT IS THEREFORE RECOMMENDED THAT**:

1. The ALJ's non-disability decision is affirmed; and

2. The case is terminated on the Court's docket.

January 19, 2022                                             *s/Sharon L. Ovington*
                                                                          Sharon L. Ovington
                                                                          United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).